# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

STEVEN L. DAVIS,

        Plaintiff,

v.                                                    Case No. 3:20-cv-1063-MMH-JBT

PORTFOLIO RECOVERY
ASSOCIATES, LLC,

        Defendant.

_____

# <u>O R D E R</u>

**THIS CAUSE** is before the Court on Defendant's Motion to Dismiss the Complaint for Lack of Standing and Failure to State a Claim and Supporting Memorandum of Law (Doc. 13; Motion), filed by Portfolio Recovery Associates, LLC (PRA) on December 15, 2020.  In the Motion, PRA moves to dismiss Plaintiff Steven L. Davis' Complaint (Doc. 1) for lack of standing pursuant to Rule 12(b)(1),[1] Federal Rules of Civil Procedure (Rule(s)), and for failure to state a claim under Rule 12(b)(6).  <u>See</u> Motion at 6.[2]  After obtaining

---

[1]     The Court notes that early in the Motion, PRA represents that it moves for dismissal "pursuant to [Rule] 12(b)(6) and 12(b)(2) . . . for failure to state a claim and for lack of jurisdiction."  <u>See</u> Motion at 6.  However, PRA's single mention of Rule 12(b)(2) appears to be a scrivener's error as PRA makes no further mention of Rule 12(b)(2).  <u>See, e.g.</u>, Motion at 9 (arguing that "Davis's claims should be dismissed under Rule 12(b)(1) because Davis lacks standing").

[2]     For ease of reference, the Court's citations to page numbers in documents in the record refer to the CM-ECF-stamped page numbers located at the top of each page, rather than a document's internal page numbers, if any.

extensions of time, Davis filed a timely response in opposition to the Motion on January 19, 2021.   <u>See</u> Plaintiff's Response to Defendant's Motion to Dismiss (Doc. 18; Response).   With leave of Court, PRA filed a reply to the Response on February 9, 2021.   <u>See</u> Defendant's Reply in Support of its Motion to Dismiss (Doc. 21; Reply).   Accordingly, this matter is ripe for review.

## I.    Background[3]

On September 22, 2020, Davis initiated this action by filing a two-count Complaint, in which he seeks redress for PRA's alleged violations of the "Fair Debt Collection Practices Act," 15 U.S.C. §§ 1692–1692p (FDCPA).   <u>See generally</u> Complaint.   In his Complaint, Davis alleges that many years ago, he and his wife became unable to pay an outstanding debt they incurred on a Sam's Club credit card.   <u>Id.</u> ¶ 6.   Prior to July 21, 2020, PRA, a debt collection agency, "acquired the right to collect the alleged debt," which was in default at the time. <u>See id.</u> ¶¶ 7–8.   Davis asserts that he received a debt collection letter (the Letter) dated July 21, 2020, from PRA which related to this outstanding debt.[4]

---

[3]    In considering the Motion, the Court must accept all factual allegations in Davis' Complaint as true, consider the allegations in the light most favorable to him, and accept all reasonable inferences that can be drawn from such allegations.   <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir. 2003); <u>Jackson v. Okaloosa Cnty., Fla.</u>, 21 F.3d 1531, 1534 (11th Cir. 1994).   As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

[4]    Davis attaches the Letter to the Complaint, thus Rule 10 permits the Court to consider the Letter as part of the pleadings for purposes of resolving PRA's Motion. <u>See</u> <u>Solis-Ramirez v. U.S. Dep't of Justice</u>, 758 F.2d 1426, 1430 (11th Cir. 1985); <u>see also</u> Complaint, Ex. A (Doc. 1-1; Letter).

<u>Id.</u> ¶¶ 5, 9.   The contents of the Letter form the basis of Davis' claims, and so the Court reproduces the relevant portion of the Letter here:



Letter at 2.

Davis alleges that upon receipt of the Letter, he was "taken aback," and became confused, angered, and distressed.  See Complaint ¶¶ 12, 16.   In this regard, he maintains that PRA's Letter has affected his "daily life and general well being," and caused him "emotional distress, anxiety, monetary losses, and loss of concentration."  Id. ¶¶ 16, 18, 21.   Additionally, Davis contends that the Letter and its contents "unduly inconvenienced" him and caused him to spend time consulting with his attorneys.  Id. ¶¶ 19–20.

Davis filed this action against PRA several months later, alleging that PRA's attempted collection of a time-barred debt using the Letter violates the FDCPA.  See generally id.  Generally, Davis takes issue with the portion of the Letter that discusses the three "savings plans" available to him.  Id. ¶¶ 10, 11, 15.  Specifically, Davis objects to what he characterizes as the absence of statements in the Letter acknowledging that PRA "cannot" sue him to collect the debt due to the statute of limitations, and the absence of statements in the Letter identifying what "specific, 'certain actions' of [his] could restart the statute of limitations under Florida law."  Id. ¶ 14.  Davis alleges that these shortcomings in the Letter were misleading and deceived him into "believing that he had no option but to immediately pay the subject debt by the deadline given" in the Letter, in violation of 15 U.S.C. § 1692e.  Id. ¶ 26.  Additionally, Davis asserts that PRA's Letter used unfair means to lead him to conclude that he had no option but to pay the debt, in violation of 15 U.S.C. § 1692f.  Id. ¶ 28.

Altogether, Davis contends "[PRA's] misleading and unfair technique is designed to force unsophisticated consumers, such as [himself], to pay the subject debt." Id. at 17.

## II.   Standards of Review

In the Motion PRA seeks dismissal of Davis' claims on two grounds. First, PRA contends that pursuant to Rule 12(b)(6), Davis fails to state a claim upon which relief can be granted.   See Motion at 9.   Second, PRA asserts that Davis lacks Article III standing to pursue his FDCPA claims, which warrants dismissal of the action under Rule 12(b)(1).   Id. at 20.   Because PRA's standing argument implicates the Court's subject matter jurisdiction, the Court must address it before turning to the sufficiency of Davis' allegations under Rule 12(b)(6).   See Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 996 (11th Cir. 2020) (observing that "[b]efore reaching the merits, we must consider our own jurisdiction and that of the district court") (citing, e.g., Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 398 (1979)); see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430–31 (2007) (determining whether subject matter jurisdiction existed over the action before turning to the merits of the plaintiffs' claims, noting that "a federal court 'generally cannot rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject matter jurisdiction) . . .'").

## A. 12(b)(1) — Subject Matter Jurisdiction

A motion to dismiss asserting a lack of standing is a challenge to the Court's subject matter jurisdiction properly considered under Rule 12(b)(1). Townsend v. U.S. Dep't of Agric., No. 2:05-cv-439-FtM-99DNF, 2007 WL 177857, at *1–2 (M.D. Fla. Jan. 19, 2007); Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) (noting that standing "implicates [the Court's] subject matter jurisdiction").   Federal courts are courts of limited jurisdiction "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress."   See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)).   Article III of the Constitution, by its plain language, limits the jurisdiction of federal courts (the "judicial power" of the courts) to the consideration of Cases and Controversies. Kelly v. Harris, 331 F.3d 817, 819 (11th Cir. 2003) (citing U.S. Const. art. III, § 2, cl. 1; Ala. Power Co. v. U.S. Dep't of Energy, 307 F.3d 1300, 1308 (11th Cir. 2002)).   The doctrine of standing "stems directly from Article III's 'case or controversy' requirement," Bochese 405 F.3d at 974, and ensures that "federal courts do not exceed their authority," Spokeo, Inc. v. Robins, 578 U.S. 856, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016).   Indeed, standing "is 'perhaps the most important' jurisdictional doctrine."   Bochese, 405 F.3d at 974

(quoting <u>Bischoff v. Osceola Cnty., Fla.</u>, 222 F.3d 874, 877–78 (11th Cir. 2000) (additional citations omitted).   In the absence of standing, a federal court lacks subject matter jurisdiction and is "powerless to hear a case."   <u>Id.</u>; <u>see also</u> <u>Univ. of S. Ala.</u>, 168 F.3d at 410 ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").

In this action, Davis, "as the party invoking federal jurisdiction, bears the burden of establishing" that he has standing to pursue the claims he alleges in the Complaint.   <u>Spokeo</u>, 136 S. Ct. at 1547.   To do so, he must establish each element of standing "'in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation.'"   <u>See</u> <u>Bischoff</u>, 222 F.3d at 878 (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).   As such, "when standing becomes an issue on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to show standing."   <u>Id.</u>; <u>Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't of the Treasury</u>, 773 F.3d 243, 245 (11th Cir. 2014) ("[W]e presume the plaintiff's 'general allegations embrace those specific facts that are necessary to support the claim.'") (quoting <u>Lujan</u>, 504 U.S. at 561).

The Eleventh Circuit has unequivocally instructed that "[u]nder settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must

have caused that injury, and a favorable decision must be likely to redress it." See Trichell, 964 F.3d at 996 (quoting Lujan, 504 U.S. at 560–61). Among these elements, the "foremost" requirement of standing is the existence of an injury in fact. Id. (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998)). "An injury in fact consists of 'an invasion of a legally protected interest' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. (quoting Lujan, 504 U.S. at 560). To qualify as "concrete," the injury must be "real, and not abstract." Id. (quoting Spokeo, 136 S. Ct. at 1548). To be sufficiently "particularized," the injury "must affect the plaintiff in a personal and individual way." Id. (quoting Spokeo, 136 S. Ct. at 1548). To satisfy the injury element of standing, a plaintiff must establish "[e]ach subsidiary element of injury—a legally protected interest, concreteness, particularization, and imminence. . ." Id. (citing Spokeo, 136 S. Ct. at 1545, and Lujan, 504 U.S. at 560).

## B. 12(b)(6) — Failure to State a Claim

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701,

705 (11th Cir. 2010).   Nonetheless, the plaintiff must still meet some minimal pleading requirements.   Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted).   Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."   Twombly, 550 U.S. at 570.   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"   Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).   Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth."   See Iqbal, 556 U.S. at 678, 680.   Thus, in ruling on a motion to dismiss, the Court must determine

whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).   The Court's consideration is limited to those facts contained in the complaint and the attached exhibits.   Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007).   Under Rule 10(c), "attachments are considered part of the pleadings for all purposes, including a Rule 12(b)(6) motion."   Solis-Ramirez, 758 F.2d at 1430; see also Rule 10(C) (providing that the exhibits are part of the pleading "for all purposes").

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   Iqbal, 556 U.S. at 679.   Moreover, when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."   Id.

### III.   Discussion

#### A. Rule 12(b)(1) — Subject Matter Jurisdiction

PRA argues that Davis lacks standing to pursue his FDCPA claims because Davis: 1) has not alleged either a harm or risk of harm arising from his receipt of the Letter; 2) has not suffered an informational injury; and 3) Davis' allegations of emotional distress are insufficient for purposes of establishing Article III standing.   See Motion at 20.

With regard to PRA's first and second arguments that Davis has neither alleged a harm or a risk of harm, nor suffered an informational injury, PRA primarily relies on the reasoning and holdings in <u>Trichell</u>, 964 F.3d 990, <u>Casillas v. Madison Ave. Assocs., Inc.</u>, 926 F.3d 329 (7th Cir. 2019), <u>Cooper v. Atlantic Credit & Finance Inc.</u>, 822 F. App'x 951 (11th Cir. 2020), and a number of district court cases applying similar reasoning.   <u>See</u> Motion at 20–23.

In <u>Trichell</u>, the Eleventh Circuit considered a consolidated appeal from the dismissal of two complaints in which the plaintiffs asserted that letters sent to them seeking to collect on time-barred debts violated the FDCPA.   <u>See</u> 964 F.3d at 995.   In dismissing the complaints for failure to state a claim, neither district court addressed whether the individual plaintiff had standing.   <u>Id.</u> The Eleventh Circuit, after observing that it must consider the question of the court's jurisdiction before addressing the merits, <u>id.</u> at 996, ultimately concluded that both plaintiffs failed to establish that they had suffered a concrete injury.   <u>Id.</u> at 997.   Notably, in conducting the injury-in-fact analysis, the Eleventh Circuit observed that "[a]s a general matter, tangible injuries qualify as concrete," but found that the plaintiffs had failed to

> allege that the collection letters caused [either of them] any tangible injury.  For example, neither plaintiff alleges that he made any payments in response to the defendants' letters—or even that he wasted time or money in determining whether to do so. Instead . . . [each plaintiff] asserted only intangible injuries, in the form of alleged violations of the FDCPA.

Id.   Additionally, the <u>Trichell</u> court explained that even in the context of a statutory violation, "Article III standing requires a concrete injury."   <u>Id.</u> (quoting <u>Spokeo</u>, 136 S. Ct. at 1549).   Because both plaintiffs alleged intangible injuries in the form of FDCPA violations, the court considered whether such intangible injuries were sufficiently concrete for the purposes of Article III standing.   <u>Id.</u>   In making this determination the court first asked whether the intangible harms the plaintiffs alleged bore a "close relationship" to a harm traditionally recognized as a basis for suit in English or American courts, and then examined congressional judgment on whether the harm might suffice for Article III purposes.   <u>Id.</u> at 997–1000.   After careful consideration, the court found that neither source supported a finding that the plaintiffs' claims of misrepresentations that failed to mislead were sufficient to confer Article III standing.   <u>Id.</u>   The Eleventh Circuit then turned to the plaintiffs' arguments that the alleged "risk of harm" the letters created and/or the "informational injuries" they claimed to have suffered were sufficient to confer them with standing.   <u>Id.</u> at 1000–05.   First, the plaintiffs argued that the letters they received created "a risk that unsophisticated consumers might be misled into making unnecessary or even harmful payments on time-barred debt."   <u>Id.</u> at 1000.   The court rejected this "risk of harm" argument because the plaintiffs failed to assert that the letters posed any risk of harm to them personally, and thus, their allegations of injury were insufficiently particularized.   <u>Id.</u> at 1001–

03 (finding convincing the Seventh Circuit's reasoning in <u>Casillas</u>, 926 F.3d 329) (concluding that plaintiffs set forth "no plausible allegation that <u>they</u> were ever at substantial risk of being misled, so [plaintiffs] cannot show standing based on such a risk to others.").   Further, the court found that any risk to the plaintiffs posed by the letters never materialized and had wholly dissipated by the time the plaintiffs filed their respective suits because the plaintiffs understood the purportedly misleading aspects of the letters, and thus the letters could not threaten them with any future concrete injury.   <u>Id.</u> at 1002-03.   Second, the plaintiffs argued that they had standing to pursue their FDCPA claims based on an alleged "informational injury."   <u>Id.</u> at 1003. Specifically, the plaintiffs asserted that the FDCPA gave them a "right to receive truthful communications from debt collectors," such that any violation of that right would qualify as a concrete injury.   <u>Id.</u>   In rejecting this contention, the court distinguished between public disclosure laws, which create a substantive entitlement to information, and the FDCPA—which does not.   <u>Id.</u> at 1003–04 (citing <u>Casillas</u>, 926 F.3d at 334–35).   Additionally, the court observed that the plaintiffs had failed to allege that they suffered any consequential harms as a result of receiving allegedly misleading communications.   <u>Id.</u> at 1004.   On these grounds, the court concluded that neither plaintiff had alleged an injury in fact for purposes of Article III standing

by virtue of receiving allegedly misleading communications that did not, in fact, mislead them.   Id. at 1005.

Similarly, in Cooper, the Eleventh Circuit determined that the plaintiff "had not alleged an injury-in-fact sufficient to confer standing" where she merely alleged that the debt collection letters she received violated the FDCPA and left her confused about her statutory rights.   822 F. App'x at 954–55.   The court noted that under Eleventh Circuit precedent, such allegations, "absent something more, are insufficient to establish that Cooper has standing to bring her claim."   Id. at 954.   Additionally, in concluding that the plaintiff had failed to establish a particularized injury and thus lacked standing to pursue her FDCPA claim, the court observed that the plaintiff did not allege that the letter caused to take or refrain from taking any action, nor did she allege that she suffered any financial or legal consequences or any other harm beyond the alleged statutory violations.   Id. at 954–55.   The court determined that Cooper had failed to allege any particularized injury because she did not allege that "she was affected in any meaningful way by the letter."   Id. at 955.   As such, her asserted injury was "insufficient to confer standing."   Id.

Here, PRA argues that Davis has not alleged that the Letter caused him harm or exposed him to a risk of harm, which prevents him from establishing that he has standing to pursue his claims.   Motion at 20–23.   Specifically, PRA contends that "[w]hen an FDCPA claim is premised upon failing to provide a

disclosure in a debt collection letter, the key question for purposes of risk of harm is whether receiving an allegedly complete disclosure would have caused the plaintiff to act differently, such that the incomplete disclosure put the plaintiff at risk of losing his statutory rights." Id. at 21 (citing for support Trichell, 964 F.3d at 1000–01; Casillas, 926 F.3d at 334–35; and Cooper, 822 F. App'x at 955).   Based on this proposition, PRA maintains that Davis' failure to allege either that the Letter caused him to act differently or put him at risk of acting differently precludes him from establishing that he has standing. See Motion at 20–23.   Additionally, PRA argues that to the extent Davis relies on the theory that he suffered an "informational injury," as was the case in Trichell, here "there was no risk that Davis [forfeited] his statutory rights." Id. at 23–24.

In response, Davis argues, albeit in a conclusory manner, that he has "delineate[d] several instances of actual harm to him, as he found the letter quite distressing," apparently referencing the allegations of injury set forth in his Complaint.   See id. at 10, n.3 (note number 2 in footer).   In the Complaint Davis alleges that he suffered injuries as a result of his receipt of PRA's debt-collection Letter.   See Complaint ¶¶ 18–21.   Specifically, Davis contends that the Letter affected his daily life and general well-being, unduly inconvenienced him, caused him to expend time consulting with his attorneys, and caused him

emotional distress, anxiety, monetary losses, and loss of concentration.[5]   Id.

Notably, the Eleventh Circuit's discussion in Trichell suggests that wasted time

and wasted money could serve as tangible injuries for purposes of alleging that

a plaintiff suffered a concrete injury in the context of the FDCPA.   See Trichell,

964 F.3d at 997 (noting that "neither plaintiff alleges that he made any

payments in response to the defendants' letters—or even that he wasted time

or money in determining whether to do so").   Although Davis' Complaint is not

a model for pleading an injury in fact, given the Eleventh Circuit's comments

in Trichell, the Court concludes, at this stage of the proceeding, that Davis has

carried his burden of asserting a concrete and particularized injury by way of

his allegations that PRA's Letter caused him to spend time consulting with his

attorneys and to incur monetary losses.   See id.[6]

---

[5]   The Court recognizes that Davis alleges these injuries in a general manner.
However, at the motion to dismiss stage the Court is required to assume the truth of
a plaintiff's factual allegations.   Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir.
1990).   And, importantly, general allegations may be sufficient to show standing.
See Bischoff, 222 F.3d at 878; see also Tsao v. Captiva MVP Restaurant Partners,
LLC, 986 F.3d 1332, 1337–38 (11th Cir. 2021) (noting that "general factual allegations
that 'plausibly and clearly allege a concrete injury'" are sufficient to show standing,
provided the injury is "actual and imminent, not conjectural or hypothetical")
(citations omitted).

[6]   In making this determination, the Court finds that the cases upon which PRA
relies in support of its standing arguments are inapposite here.   See generally Motion.
The plaintiffs in the cases PRA cites actually did allege only intangible injuries—
unlike Davis, who has alleged, albeit generally, several tangible injuries-in-fact.   See,
e.g., Trichell, 964 F.3d at 997 ("[T]he complaints here do not allege that the collection
letters caused [the plaintiffs] any tangible injury."); Cooper, 822 F. App'x at 954–55
(noting that "[h]ere, [plaintiff's] alleged injuries are just as inchoate, if not more so
[than the Trichell plaintiffs]"); Casillas, 926 F.3d at 331–32 ("The only harm that

Because Davis has sufficiently alleged that he suffered injuries-in-fact for purposes of Article III standing as to his FDCPA claims, the Court need not consider PRA's remaining argument that Davis' allegations of emotional distress are insufficient to establish standing.   Instead, the Court will turn to PRA's contention that Davis' Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

### B. Rule 12(b)(6) — Failure to State a Claim

"To establish a violation of the FDCPA, the plaintiff must show (1) the defendant qualifies as a 'debt collector,' (2) the challenged conduct was made 'in connection with the collection of any debt,' and (3) the defendant engaged in an act or omission prohibited by the FDCPA."   Domke v. MRS BPO, LLC, No. 8:19-cv-1442-T-36AEP, 2020 WL 513807, at *2 (M.D. Fla. Jan. 31, 2020) (citing Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1216 (11th Cir. 2012)); see also Valle v. First Nat'l Collection Bureau, Inc., 252 F. Supp. 3d 1332, 1335 (S.D. Fla. 2017).   To determine whether a defendant has violated sections 1692e or 1692f of the FDCPA, the Eleventh Circuit applies the "least sophisticated consumer" standard.   See, e.g., Holzman v. Malcolm S. Gerald &

---

Casillas claimed to have suffered, however, was the receipt of an incomplete letter—and that is insufficient to establish federal jurisdiction."); Ruffin v. Dynamic Recovery Solutions, LLC, Case No. 5:20-cv-272-Oc-30PRL, 2020 WL 6134666, at *3 (M.D. Fla. Oct. 19, 2020) ("In sum, Ruffin attempts to bring a claim for a plausible, technical violation of the FDCPA. But a mere violation, without a showing of a concrete and particularized injury, is insufficient to convey standing.").

Assocs., Inc., 920 F.3d 1264, 1269 (11th Cir. 2019) (citing LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193, 1201 (11th Cir. 2010)).   "Under that standard, a debt collector violates § 1692e by making a representation in a collection letter that would be deceptive or misleading to the 'least sophisticated' recipient of the letter."   Id.   "Likewise, a collection practice violates § 1692f if it would be unfair or unconscionable as applied to the 'least sophisticated' debtor subjected to the practice."   Id.   Notably, "[o]nly material misrepresentations constitute violations of the FDCPA."   Domke, 2020 WL 513807, at *2 (citations omitted); see also Rivas v. Midland Funding LLC, 398 F. Supp. 3d 1294, 1304 (S.D. Fla. 2019), aff'd, 842 F. App'x 483 (11th Cir. 2021) (observing that "[c]ourts throughout the country have consistently held that only material misrepresentations constitute a violation of the FDCPA").   To qualify as a "material" misrepresentation, the statement must have the ability to "influence the decision or ability of the least sophisticated consumer to pay" or challenge a debt.   Jones v. Jason A. Craig & Assocs., P.C., No. 5:18-CV-207 (MTT), 2019 WL 362273, at *3 (M.D. Ga. Jan. 29, 2019).   If a misrepresentation "would not influence an unsophisticated consumer's ability to challenge a debt, then it does not violate the FDCPA, even if the statement is false in some technical sense."   Domke, 2020 WL 513807, at *2 (quoting Bryant v. Kass Shuler, P.A., No. 16-CV-24082-GAYLES, 2017 WL 766343, at *2 (S.D. Fla. Feb. 28, 2017) (internal quotation marks and additional citation omitted)).

Here, the parties do not dispute whether Davis has established the first two elements of an FDCPA claim; instead, their disagreement focuses on the third element, i.e., whether PRA engaged in an activity prohibited by the FDCPA.   See generally Motion; Response; Reply; see also Domke, 2020 WL 513807, at *2.   As noted, Davis bases his claims that PRA's Letter violated the FDCPA on the theory that the Letter was misleading and unfair and the disclaimer in the Letter failed to remedy the misrepresentations and unfairness caused by the Letter's misleading and unfair savings offers and demands for payment.   See generally Complaint.   In other words, Davis asserts that PRA's Letter, especially the "savings plan" portion, was misleading, and maintains that PRA's "disclaimer" was insufficient to dispel the Letter's misleading effects.   See id. ¶ 14–15; see also Response at 4, 7–8.   The disclaimer portion of the Letter is offset from other portions and is in a legible font similar in size to that used in most of the Letter.   See Letter at 2.   It reads as follows:

> The law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, we will not sue you for it or report payment or non-payment of it to a credit bureau. Depending on the laws of your state, certain actions, such as making a payment or promising to pay the debt, may restart the time period for the filing of a lawsuit against you; but even if that were the case, we still would not sue you on this debt.

Id.

- 19 -

Davis alleges that this disclaimer was deficient for two reasons: first, he contends that it failed to affirmatively state that the statute of limitations prevented PRA from suing him; and second, he asserts that the Letter failed to explain what specific actions of his could restart the statute of limitations under Florida law.[7]   See Complaint ¶ 14.   According to Davis, "[t]hese omissions, coupled with Defendant's demands for payment of a time-barred debt throughout the letter," misled and deceived him "into believing that he had no option but to immediately pay the subject debt by the deadline given in the letter," in violation of sections 1692e, e(1), e(2)(A), and e(5) of the FDCPA.   See Complaint ¶¶ 15, 17, and 26.   Similarly, Davis asserts that PRA's use of the Letter to seek payment on a time-barred debt unfairly led him to believe he had to "immediately pay the subject debt," in violation of section 1692f of the FDCPA.   Id. ¶ 28.

---

[7]     The Court notes that in the Complaint, Davis does not incorporate or re-allege any factual allegations into either count.   See Complaint ¶¶ 22–26, 27–28. Therefore, it is somewhat unclear from the Complaint which portions of the Letter Davis contends are violative of the FDCPA.   However, PRA did not move for a more definite statement or argue that the facts underlying Davis' claims are in any way unclear.   Instead, in the Motion PRA characterizes Davis' claims as stemming from the two shortcomings alleged in paragraph fourteen of the Complaint.   See Motion at 6.   In his Response, Davis appears to affirm this characterization.   See Response at 4 ("Specifically, the attempted disclaimer is written as if Defendant has chosen not to sue, rather than that they cannot sue, and it fails to disclose it cannot make any credit report.").   Thus, the Court will consider these portions of the letter as underlying Davis' claims.   However, as Davis also specifically mentions the "savings plan" portion of the Letter, the Court will discuss whether Davis has stated a claim to relief as to this portion of the Letter as well.   See Complaint ¶¶ 10, 11; Response at 7–8.

Case 3:20-cv-01063-MMH-JBT   Document 32   Filed 09/10/21   Page 21 of 37 PageID 143


With regard to the first alleged deficiency in the disclaimer—that PRA failed to state it "cannot" sue Davis for the debt—PRA argues that Davis has failed to state a claim because the "will not sue" language used in the disclaimer fully complies with the FDCPA.  See Motion at 7.  In particular, PRA contends that it need not state that it "cannot" sue on the debt, because the disclaimer's statement that "[t]he law limits how long you can be sued on a debt . . . due to the age of this debt, we will not sue" accurately informs consumers that the debt is not legally enforceable.  Id.  Additionally, PRA cites to a consent order[8] of the Consumer Financial Protection Bureau (CFPB)[9] as support for its assertion that it was required to use the "will not sue" language in its debt-collection letters.  Id. at 14–15.  PRA further contends that its reliance on the consent

---

[8]    At the motion to dismiss stage, without converting a motion to dismiss into a motion for summary judgment, a district court may consider documents outside the four corners of the complaint if they are central to the plaintiff's claim and the authenticity of the documents are not challenged.  See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010).  However, here PRA cites the consent decree in question not as documentary evidence, but rather as persuasive authority that the language in the Letter did not violate the FDCPA.  See Motion at 7,    n.1    (citing    Consent    Order,    available    at http://files.consumerfinance.gov/f/201509_cfpb_consent-order-portfolio-recovery-associates-llc.pdf; Consent Order).  Thus, the Court may consider the Consent Order to the extent it has the power to persuade without determining whether it is central to Davis' claim and whether its authenticity is unchallenged.  See Valle, 252 F. Supp. 3d at 1341.

[9]    The CFPB is "an independent regulatory agency tasked with ensuring that consumer debt products are safe and transparent."  Seila Law LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183, 2191 (2020).


- 21 -

order entitles it to protection under the FDCPA's "safe harbor defense" found at 15 U.S.C. § 1692k(e).[10]

The Court's review of relevant authority reveals that a significant majority of federal courts across the country have concluded that substantially similar "will not sue" language in debt-collection letters does not violate the FDCPA. See, e.g., Valle, 252 F. Supp. 3d at 1340 (rejecting plaintiff's argument that "we will not sue you" was misleading, noting that "[r]ead in the context of the entire paragraph, the phrase 'we will not sue you' is not false or deceptive, even from the perspective of the least sophisticated consumer"); Stimpson v. Midland Credit Mgmt., Inc., 944 F.3d 1190, 1197 (9th Cir. 2019) (rejecting plaintiff's argument that the language "[d]ue to the age of this debt, we will not sue you" is deceptive or misleading under the FDCPA, because in context "[t]he natural conclusion is that the debt is time barred"); Pariot v. Portfolio Recovery Assocs., LLC, No. 2:18-cv-09614-SJO (GJSx), 2019 WL 2635586, at *3 (C.D. Cal. June 25, 2019) (observing that "[w]hile it is true that one court in the Southern District [of California] found a plaintiff's similar allegations sufficient, many more courts examining similar letters have found the allegations lacking") (citations omitted); Tillman v. Midland Credit Mgmt.,

---

[10]     The FDCPA provides, in relevant part: "[n]o provision of this section imposing any liability shall apply to any act done or omitted in good faith conformity with any advisory opinion of the Bureau . . . ."   15 U.S.C. § 1692k(e) (emphasis added).

No. 4:19-cv-4030, 2019 WL 6718985, at *5 (W.D. Ark. Dec. 10, 2019) (determining that the defendant's use of the language "we will not sue you," instead of "we cannot sue you," does not present a plausible FDCPA violation); Watson v. Credit Control, LLC, No. 4:19CV137 HEA, 2020 WL 1083644, at *4 (E.D. Mo. March 6, 2020) (same); Will v. Portfolio Recovery Assocs., LLC, No. 18-CV-02790-MSK-KMT, 2019 WL 4674352, at *5 (D. Colo. Sept. 24, 2019) ("Even the least sophisticated consumer would conclude that this unambiguous language means what it says—that PRA will not, and moreover cannot, sue [plaintiff] on his debt. Any other interpretation is both unreasonable and borders on the preposterous."); Smith v. Dynamic Recovery Solutions, LLC, No. 2:19-cv-00135-DCN, 2019 WL 2368460, at *4 (D.S.C. June 5, 2019) ("The court concludes that the Letter's 'will not sue' language is not misleading and does not violate the FDCPA."); Jones v. Synergetic Commc'n, Inc., No. 18-CV-1860-BAS-RBB, 2018 WL 6062414, at *7 (S.D. Cal. Nov. 20, 2018) ("in the context of this case, the 'will not sue' language could not plausibly mislead the least sophisticated consumer"); Contreras v. Portfolio Recovery Assocs., LLC, No. CV 19-06969 PA (AGRx), 2020 WL 204114, at *4–5 (C.D. Cal. Jan. 10, 2020); Swann v. Dynamic Recovery Sols., LLC, No. 4:18-CV-1000-VEH, 2018 WL 6198997, at *11–12 (N.D. Ala. Nov. 28, 2018); but see Richardson v. LVNV Funding, LLC, No. 16 C 9600, 2017 WL 4921971, at *1 (N.D. Ill. Oct. 31, 2017) (determining that the language "will not," rather than "cannot" is alone sufficient to mislead

a consumer); <u>Holt v. LVNV Funding, LLC</u>, 147 F. Supp. 3d 756, 760–61 (S.D. Ind. 2015).   Notably, the Eleventh Circuit has suggested that it would approve of the use of such language in debt-collection letters.   <u>See</u> <u>Holzman</u>, 920 F.3d at 1273 (citing <u>Shields v. J.C. Christensen & Assoc., Inc.</u>, 2017 WL 1106085, at *1 (S.D. Ind. Mar. 24, 2017), in apparent approval of the following language: "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding LLC will not sue you for it, and LVNV Funding LLC will not report it to any credit reporting agency.").

Two primary lines of reasoning lead courts to conclude that substantially similar "will not sue" language does not violate the FDCPA.   <u>See</u> <u>Smith</u>, 2019 WL 2368460, at *3.   First, many courts consider the entire context in which the phrase "will not sue" is presented, rather than looking to the phrase in isolation.   <u>See</u> <u>id.</u> (citing <u>Valle</u>, 252 F. Supp. 3d at 1340).   As the Ninth Circuit explained, "[t]he phrase 'due to the age of this debt, we will not sue you,' follows immediately after the sentence explaining that 'the law limits how long you can be sued on a debt.'"   <u>Stimpson</u>, 944 F.3d at 1197 (internal modifications and citation omitted).   Thus, "[t]he first sentence 'draws a connection between the legal unenforceability of debts in general and [the debt collector's] promise not to sue."   <u>Id.</u>   Second, some courts find that consent decrees of the Federal Trade Commission or the CFPB constitute persuasive authority suggesting that

similar "will not sue" disclaimer language does not violate the FDCPA.[11] Smith, 2019 WL 2368460, at *4 (citing Valle, 252 F. Supp. 3d at 1341); see also Pariot, 2019 WL 2635586, at *3–4; Judah v. Total Card, Inc., No. 16-5881, 2017 WL 2345636, at *5 (D.N.J. May 30, 2017).   As the Valle court explained, although "[a]n agency's formal interpretation of a statute, such as opinion letters, policy statements, agency manuals, and enforcement guidelines, are not entitled to deference . . . such interpretations are entitled to respect 'to the extent that those interpretations have the power to persuade.'"   252 F. Supp. 3d at 1341 (quoting Christensen v. Harris Cnty., 529 U.S. 576, 578 (2000)).

In the Response, Davis does not directly address the authority contrary to his position regarding PRA's use of "will not sue" language.   See generally Response.   Instead, he generally maintains that the Letter, "looked at as a whole through the eyes of an unsophisticated consumer, could absolutely be seen as misleading."   Response at 8.   In support, Davis primarily relies on

---

[11]     In this regard, some courts have found that such consent decrees buttress their conclusions that "will not sue" accurately informs consumers about the legal unenforceability of the subject debt, and still other courts consider consent decrees alone to be "the most persuasive" reasoning for finding that "will not sue" language or its equivalent does not violate the FDCPA.   Compare Valle, 252 F. Supp. 3d at 1341 ("[T]he Court does find that the fact that the two agencies charged with enforcing the FDCPA mandated the language used by the Defendant serves to reinforce its finding that the language does not constitute a false representation or a deceptive means of collecting the debt"), with Gutierrez v. Portfolio Recovery Assocs., LLC, No. CV 18DSF (RAOx), 2019 WL 422195, at *1 (C.D. Cal. Feb. 1, 2019) (concluding that the defendant's "most persuasive" argument that the language "will not sue" does not violate the FDCPA was the consent decree entered by the CFPB).

Pantoja v. Portfolio Recovery Assocs., LLC, an opinion of the Seventh Circuit Court of Appeals.   See Response at 8–10 (citing Pantoja, 852 F.3d 679 (7th Cir. 2017); Buchanan v. Northland Grp., Inc., 776 F.3d 393, 397 (6th Cir. 2015); and Tatis v. Allied Interstate, LLC, 882 F.3d 422, 429 (3d Cir. 2018)).[12]   In Pantoja, the Seventh Circuit affirmed the district court's grant of summary judgment in favor of the plaintiff on his claim that the defendant, PRA, violated section 1692e by sending a deceptive and misleading debt-collection letter.   852 F.3d at 681–82.   In relevant part, the court determined that the debt collection letter at issue was deceptive and misleading because it gave the impression that the defendant had merely chosen not to sue, rather than disclosing that it was legally barred from doing so.   Id. at 686.   In the Response, Davis quotes portions of the Pantoja opinion to explain why the court found such language to be deceptive and misleading.   See Response at 9.   However, Davis' discussion of the Pantoja decision omits a material fact that renders Pantoja inapposite to

---

[12]     Davis represents in the Response that "[t]his Circuit's appellate court has agreed with [the Pantoja, Buchanan, and Tatis] courts."   Response at 8.   However, Davis fails to provide any citation of authority for this proposition, and the Court's review of relevant precedent reveals none.   To the extent that Davis would argue that Holzman, 920 F.3d at 1273, follows Pantoja, Buchanan, and Tatis, it appears the Eleventh Circuit does so only to the extent they hold that "an express threat of litigation is not required to state a claim for relief under section 1692e so long as one can reasonably infer an implicit threat."   See Holzman, 920 F.3d at 1271.   However, despite Davis' arguments in the Response concerning this issue, see Response at 5–7, whether the Letter threatens litigation is not an issue in this action.   Indeed, although Davis cites to 15 U.S.C. § 1692e(5) in the Complaint, he does not include any allegations regarding threats.   See generally Complaint.

the instant case.   Id.   Indeed, in the Response Davis explains that the Pantoja court determined that the language "[b]ecause of the age of your debt we will not sue you for it" in the debt-collection letter left the reader "to wonder whether [the debt collector] has chosen to go easy on this old debt out of the goodness of its heart, or perhaps because it might be difficult to prove the debt, or perhaps for some other reason,"—which was misleading in violation of the FDCPA.   See id. (quoting Pantoja, 852 F.3d at 686).   However, missing from Davis' discussion of the opinion is the materially relevant fact that the Pantoja defendant "omitted the first sentence from the consent decree about the law limiting how long you can be sued for a debt."   Pantoja, 852 F.3d at 686.   In other words, in the Pantoja letter, PRA "opted instead to include only the vaguer '[b]ecause of the age of your debt we will not sue you for it'" language.   Id. Conversely, in the instant Letter PRA included the prefacing sentence "[t]he law limits how long you can be sued on a debt."   Letter at 2.   Therefore, to the extent Davis relies on Pantoja and like cases, such reliance is misplaced.   See Smith, 2019 WL 2368460, at *4 (distinguishing Pantoja on the grounds that "the collection letter at issue [in Pantoja] did not contain language that said '[t]he law limits how long you can be sued on a debt' and only included the language that 'because of the age of your debt, we will not sue you for it'"); see also Jones, 2018 WL 6062414, at *5 (concluding that "Pantoja is inapposite

because its reading of the 'will not sue' language turned on the omission of 'the law limits how long you can be sued on a debt'").

Although Davis does not address PRA's invocation of section 1692k(e)'s safe harbor defense in his Response, <u>see generally</u> Response, the Court finds it to be unavailing.  Section 1692k(e) shields from liability "any act done or omitted in good faith in conformity with any advisory opinion of the [CFPB]." 15 U.S.C. § 1692k(e).   However, the Consent Order upon which PRA relies does not appear to be an "advisory opinion" for purposes of the FDCPA's safe harbor provision.  <u>See</u> <u>Gutierrez</u>, 2019 WL 422195, at *1 ("The difficulty for Defendant is that the consent decree is not an official 'advisory opinion' of the CFPB. In fact, the CFPB does not appear to issue advisory opinions."); <u>see also</u> <u>Pariot</u>, 2019 WL 2635586, at *4 (noting that a consent order is not an "advisory opinion" for purposes of section 1692k(e) of the FDCPA).  Thus, PRA may not invoke section 1692k(e) as a safe harbor defense.   Nevertheless, courts have acknowledged that a publicly available consent decree has a persuasive effect similar to an advisory opinion—indeed, its effects may even be stronger when "it is particularized to the party and conduct at issue." <u>Pariot</u>, 2019 WL 2635586, at *4; <u>see also</u> <u>Gutierrez</u>, 2019 WL 422195, at *1.   Here, PRA was a party to the Consent Order of the CFPB from which PRA reproduced, verbatim, the mandated disclaimer language.  <u>Compare</u> Consent Order ¶ 126(a), <u>with</u> Letter at 2.  Thus, the CFPB's Consent Order bears significant persuasive

weight towards a finding that PRA's use of the language "we will not sue you," in context, is not violative of the FDCPA.[13]   See Pariot, 2019 WL 2635586, at *4.

Reviewing the language of the disclaimer in the Letter, the relevant authority, and considering both the entire context of the disclaimer and the persuasive effect of the CFPB's Consent Order, the Court concludes that PRA's use of the "we will not sue you" language in the Letter is neither misleading nor deceptive under section 1692e of the FDCPA as a matter of law.   Valle, 252 F. Supp. 3d at 1339–42.   In making this determination, the Court agrees with the majority of courts that have held that similar use of "will not sue" language is not violative of the FDCPA.   See e.g., id.; Stimpson, 944 F.3d at 1197; Pariot, 2019 WL 2635586, at *3; Tillman, 2019 WL 6718985, at *5; Watson, 2020 WL 1083644, at *4; Will, 2019 WL 4674352, at *5; Smith, 2019 WL 2368460, at *4; Jones, 2018 WL 6062414, at *7; Contreras, 2020 WL 204114, at *4–5; Swann, 2018 WL 6198997, at *11–12.   Therefore, as Davis has not shown that PRA's use of "will not sue" language constitutes an act or omission prohibited by the FDCPA, see Domke, 2020 WL 513807, at *2; he has failed to state a claim to relief under section 1692e of the FDCPA, see Holzman, 920 F.3d at 1269.

---

[13]     The Court notes that at least one court has relied in part on this same Consent Order in determining that a different defendant's use of remarkably similar language did not violate the FDCPA.   See Judah, 2017 WL 2345636, at *5 (citing Consent Order in determining that the "Collection Letter is not deceptive").

Notably, with regard to Davis' section 1692f claim, "[t]he Eleventh Circuit has indicated that a plaintiff cannot succeed on a section 1692f claim if it is based on the same facts as a failed 1692e claim." Swann, 2018 WL 6198997, at *14 (citing LeBlanc, 601 F.3d at 1200 n.31); see also Domke, 2020 WL 513807, at *5 (observing that "[t]his Court has stated that [a] complaint will be deemed deficient under [§ 1692f] . . .if it does not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA") (modifications in original) (internal quotation marks and citations omitted). Thus, to the extent that Davis bases his section 1692f claim in Count II on PRA's use of "will not sue" language, Davis has also failed to state a claim under this section of the FDCPA. Id.

Next, the Court turns to Davis' contention that PRA's disclaimer violates the FDCPA because PRA failed to specify which of Davis' potential actions could revive the statute of limitations applicable to the debt. As to this issue, PRA maintains that its disclaimer was more than sufficient for purposes of the FDCPA. See Motion at 18. Specifically, PRA argues that the disclaimer language "[d]epending on the laws of your state, certain actions, such as making a payment or promising to pay the debt, may restart the time period for the filing of a lawsuit against you . . ." discloses more than necessary because the FDCPA generally does not require debt collectors to make any warning regarding revival of the applicable statute of limitations in Florida, as partial

payment alone does not revive the statute of limitations.   See id. Additionally, PRA notes that it represented to Davis that even if he had taken action to restart the statute of limitations, PRA still would not sue him.   See id.; see also Letter at 2 ("[C]ertain actions . . . may restart the time period for the filing of a lawsuit against you; but even if that were the case, we still will not sue you on this debt.").[14]

Davis fails to respond to PRA's arguments concerning this disclaimer language.   See generally Response.   As a result, PRA contends in the Reply that Davis has abandoned this alleged basis for claiming that PRA's Letter violated the FDCPA.   See Reply at 3.   Nonetheless, the Court will consider the merits of PRA's argument regarding the disclaimer and whether Davis has stated a plausible claim to relief.   In doing so, however, the Court declines to make arguments on Davis' behalf.

In the Complaint, Davis maintains that PRA should have identified the discrete "certain actions" that could restart the applicable statute of limitations under Florida law.   See Complaint ¶ 14.   However, because Davis did not respond on this issue, he points to no authority suggesting that debt-collectors

---

[14]      In support of these arguments, PRA cites Stimpson, 944 F.3d at 1198, Madinya v. Portfolio Recovery Assocs., LLC, No. 18-CV-61138, 2018 WL 6590829, at *3 (S.D. Fla. Dec. 14, 2018), Gunther v. Midland Credit Mgmt., Inc., No. 2:17-CV-704, 2018 WL 4621764, at *10 (D. Utah Sept. 26, 2018), and Domke, 2020 WL 513807, at *4.   See Motion at 18–19.

have an affirmative duty to advise consumers of which specific actions may revive an applicable statute of limitations.   Notably, the authority cited by PRA, and in particular the reasoning in <u>Domke</u>, 2020 WL 513807, suggests the opposite.   In <u>Domke</u>, the court considered a plaintiff's claim that the following language in the defendant's debt-collection letter violated the FDCPA: "[i]n many circumstances, you can renew the debt and restart the time period for the filing of a lawsuit against you if you take specific action such as making certain payment on the debt."   <u>See Domke</u>, 2020 WL 513807, at *1.   The <u>Domke</u> plaintiff asserted that this language misrepresented Florida law on the question of whether a partial payment is sufficient to restart the statute of limitations on an expired debt.   <u>Id.</u>   In rejecting the plaintiff's contention that language similar to that in PRA's disclaimer violated the FDCPA, the <u>Domke</u> court observed that "[c]ourts have been reluctant to require debt collectors to provide legal advice to debtors."   <u>Id.</u> (citing <u>Stimpson</u>, 944 F.3d at 1198).   Additionally, the court noted that defendant's "statements did no more than provide general information cautioning Plaintiff that action by Plaintiff could change the legal status of the debt."[15]   <u>Id.</u>

---

[15]   The Eleventh Circuit has recently suggested that debt-collectors may avoid "venturing into the realm of legal advice" by including "general language" concerning the applicability of a statute of limitations in their debt-collection letters.   <u>See</u> <u>Holzman</u>, 920 F.3d at 1272–73 (quoting <u>Buchanan</u>, 776 F.3d at 400, and giving as an example of such general language the same wording used in PRA's Letter).

Similarly, here PRA provided Davis general information cautioning him that certain of his actions could change the legal status of his debt, without making any affirmative legal representations. <u>See</u> Letter at 2. PRA accurately qualified its cautionary statement: "[d]epending on the laws of your state, certain actions, such as making a payment or promising to pay the debt, <u>may</u> restart the time period for the filing of a lawsuit against you." <u>Id.</u> (emphasis added). Further, PRA advised Davis that even if he took action to revive the statute of limitations, PRA "still would not sue [him] on the debt." <u>Id.</u> Nothing in the record suggests that this cautionary language in the disclaimer, especially coupled with PRA's representation that it would not sue Davis even if he took action to revive the statute of limitations, was in any way violative of the FDCPA. Even assuming, arguendo, that PRA's general cautionary language constituted a misrepresentation, or that PRA was under an obligation to advise Davis of which specific actions could revive the statute of limitations, the Court is unable to find that such hypothetical shortcomings were <u>material</u>—as necessary to establish that PRA violated the FDCPA. <u>Domke</u>, 2020 WL 513807, at *2; <u>Rivas</u>, 398 F. Supp. 3d at 1304. Indeed, the Court concludes as a matter of law that the cautionary language PRA included in the Letter's disclaimer "would not influence an unsophisticated consumer's ability to challenge a debt," even if the cautionary language was somehow technically false. <u>Domke</u>, 2020 WL 513807, at *2. Because the Court

concludes that Davis has failed to state a claim that the cautionary language in PRA's disclaimer violates section 1692e of the FDCPA, to the extent Davis bases his section 1692f claim set forth in Count II on the same cautionary language, Davis also has failed to state a claim.   <u>Swann</u>, 2018 WL 6198997, at *14 (citing <u>LeBlanc</u>, 601 F.3d at 1200 n. 31); <u>Domke</u>, 2020 WL 513807, at *5.

Finally, to the extent that Davis maintains in the Response that the Letter's time-sensitive "savings plans" section violates the FDCPA by misleading the least-sophisticated consumer to believe that the debt may be legally enforceable, <u>see</u> Response at 8, the Court notes that Davis does not set forth any specific allegations in the Complaint to this effect.   <u>See generally</u> Complaint.   However, Davis does allege in a non-specific manner that "Defendant's demands for payments of a time-barred debt throughout the letter, misled Plaintiff, an unsophisticated consumer, to think the time-barred debt may still be legally enforceable. . . ."   Complaint ¶ 15.   Davis' assertion in this regard notwithstanding, the Court finds persuasive the analysis in <u>Contreras</u>, a case in which the court rejected a plaintiff's claim that nearly identical language contained in another of PRA's debt-collection letters violated the FDCPA.   <u>See</u> 2020 WL 204114, at *5.   In granting the defendant's motion to dismiss the plaintiff's FDCPA claims, the <u>Contreras</u> court held that "[r]ead as a whole, the letter offsets the 'Account Offers' section with the 'will not sue' disclaimer immediately below it."   <u>Id.</u> (citations omitted).   The court

concluded that "[e]ven a least sophisticated debtor would recognize that the time-sensitive offer is optional, and he will not be penalized with litigation from Defendant if he chooses to forego the offer." Id. Further, the court observed that "it is 'difficult to see how labeling a collection agency's offer to permit a debtor to pay less than he owes as 'deceptive' would be good public policy. Debt collectors would be deterred from ever offering a lower settlement amount.'" Id. (citations omitted). So too here. Given that PRA's disclaimer in the Letter adequately informed Davis that the debt was legally unenforceable, the Court follows the reasoning in Contreras and concludes that the "savings plan" portion of the Letter did not violate the FDCPA as a matter of law because—read with the Letter as a whole—this section would not mislead even the least-sophisticated consumer. See id. Therefore, Davis' exceedingly general allegations concerning the "savings offers" listed in the Letter are insufficient to state a claim to relief under the FDCPA.

## IV. Conclusion

Although the Court determines that Davis has made sufficient allegations to establish standing to pursue his FDCPA claims at the motion to dismiss stage of the proceedings, the Court concludes that Davis has failed to state a plausible claim that PRA took an action that violated the FDCPA.[16] As

---

[16] In the Response, Davis asserts—for the first time—that "Defendants also failed to disclose that neither defendant could make any credit report about the debt which

such, the Complaint is due to be dismissed pursuant to Rule 12(b)(6).   Domke, 2020 WL 513807, at *2; <u>Valle</u>, 252 F. Supp. 3d at 1335.

Accordingly, it is

**ORDERED:**

1. Defendant's Motion to Dismiss the Complaint for Lack of Standing and Failure to State a Claim and Supporting Memorandum of Law (Doc. 13; Motion) is **GRANTED, in part, and DENIED, in part**.

   a. The Motion is **GRANTED** to the extent Plaintiff's claims are **DISMISSED** with prejudice pursuant to Rule 12(b)(6).

   b. The Motion is otherwise **DENIED**.

2. The Clerk of the Court is directed to enter judgment, terminate all pending motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 10th day of September, 2021.

_Marcia Morales Howard_
**MARCIA MORALES HOWARD**
United States District Judge

---

might lead the least-sophisticated consumer into thinking they may."   <u>See</u> Response at 10, n.2 (note number 1 in footer).   Davis' argument notwithstanding, because the Complaint is wholly devoid of any allegations regarding PRA's failure to disclose that it cannot make a credit report, the Court will not consider this claim raised by Davis for the first time in the Response.   <u>See, e.g.</u>, <u>Eiras v. Florida</u>, 239 F. Supp. 3d 1331, 1342 (M.D. Fla. 2017) (observing that "it is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss") (quoting <u>In re Androgel Antitrust Litigation (No. II)</u>, 687 F. Supp. 2d 1371, 1381 (N.D. Ga. 2010)).

lc27
Copies to:
Counsel of Record